## I.    PRELIMINARY STATEMENT

This Memorandum of Law together with the accompanying Declaration of Jonathan Pollack ("Pollack Opp. Decl.") are submitted on behalf of plaintiffs Ramon Ayala, El Cartel Records, Inc. and Los Cangris, Inc. d/b/a Cangris Publishing (collectively, "Plaintiffs") in opposition to defendants TeeVee Toons, Inc.'s d/b/a TVT Records and TVT Music, Inc.'s, (collectively, "TVT") Motion to Dismiss Plaintiffs' Amended Complaint ("TVT's Motion")

At the outset, Plaintiffs note that TVT's Motion sets forth legal arguments which TVT failed to raise in its voluminous brief in opposition to Plaintiffs' pending Motion for a Preliminary Injunction, and raised for the first time, only after TVT refused to provide copies of any relevant documents or engage in any discovery.

TVT's Motion is without merit with respect to every legal assertion made therein. Namely, (i) Plaintiffs' Amended Complaint alleges, and the opposing declaration of Jonathan Pollack unequivocally demonstrates, that (a) TVT is liable for contributory and vicarious infringement of Federal copyright law within the territory of the United States thereby conferring subject matter jurisdiction and (b) TVT committed predicate acts in the United States which also confer subject matter jurisdiction with respect to the copyright infringement alleged to have taken place in Europe; (ii) this Court may exercise subject matter jurisdiction in cases of transnational copyright infringement; (iii) no extraterritorial application of the Lanham Act is required; and (iv) Plaintiffs' Claim for Declaratory Relief should not be dismissed.

1

## II.    FACTS RELEVANT TO TVT'S MOTION

The facts relevant to this action and the instant motion are set forth in detail in the Amended Complaint.  Plaintiffs will not burden this Court with a full reiteration of such facts, but instead shall identify the most salient facts and reference the paragraphs where such facts are set forth.

### The Plaintiffs

Plaintiff Ramon Ayala p/k/a "Daddy Yankee" ("Daddy Yankee") is an individual residing in Puerto Rico and is the President and principal shareholder of Plaintiffs El Cartel Records, Inc. ("El Cartel") and Los Cangris, Inc. d/b/a Cangris Publishing ("Cangris").  Cangris is in the business of procuring and exploiting musical copyrights, including the the Gasolina Composition (Am. Compl. Par. 6, 11).  El Cartel is in the business of creating and distributing master recordings of music, including the Gasolina Recording  (Am. Compl. Par 6, 9). (the Gasolina Master and Gasolina Composition are sometimes collectively referred to herein as the "Gasolina Recording.")

**The TVT Defendants**

Defendant, Tee Vee Toons, Inc. d/b/a "TVT Records" and TVT Music, Inc. are corporations located in the State of New York. TVT Records is in the business of among other things, creating and distributing throughout the United States and the world, master recordings of music (Am. Compl. Par. 8)  TVT Music, Inc. is the wholly owned subsidiary and publishing arm of Tee Vee Toons, Inc. (Am. Compl. Par. 1). Upon information and belief Steven Gottlieb ( "Mr. Gottlieb" ) is the president and founder of TVT.  TVT Records and TVT Music, Inc. are hereinafter individually and collectively referred to as  "TVT", as applicable.)

**Creation and Public Release of the Gasolina Recording.**

Cangris Publishing is the sole and exclusive owner of the Gasolina Composition and El Cartel is the sole and exclusive owner of the Gasolina Master written and performed by Plaintiff Ramon Ayala.  (Am. Compl. Par. 11)  The  Gasolina Recording was initially released by El Cartel in late 2004.  (Am. Compl. Par. 14)

**Defendants Acknowledge Copying**

Thereafter, an initially unauthorized derivative work embodying the Gasolina Recording was made by recording artists contracted to TVT ( "Infringing Derivative Work" )." (Am. Compl. Par. 8, 20)   TVT has never denied that the Infringing Derivative Work embodies portions of the Gasolina Master and Gasolina Composition. TVT has repeatedly requested that Plaintiffs execute an

agreement assigning to TVT sole and exclusive ownership and control of the Infringing Derivative Work. (Am. Compl. Par 18-24, 33).

### **Grant of Limited License**

Subsequent to the improper and illegal creation of the Infringing Derivative Work, Plaintiff, El Cartel in its discretion, granted Defendant TVT an oral limited license (the "Limited License") solely to exploit the Infringing Derivative Work on Defendant TVT's distributed full length record album of Lil Jon called "Crunk Juice" (the "Crunk Juice Album")." (Am. Compl Par. 25)

### **Defendants Exploited the Infringing Derivative Work**
### **Beyond the Scope of the Limited License in the United States**

Plaintiffs allege that Defendants have licensed the Infringing Derivative Work to third parties for use in compilations, digital downloads and in synchronization licenses in violation, and outside the scope, of the Limited License (Am. Compl. Par. 26) to wit, other than embodied in the Crunk Juice Album. Such licenses are hereinafter, referred to as "the Infringing Licenses"

Defendant TVT refuses to withdraw the Infringing Licenses, and continues to issue and assert the right to exploit the Infringing Derivative Work in violation of the Limited License and applicable copyright laws. (Am. Compl Par. 29; Pollack Opp. Decl. Par. 21)

**TVT Asserts Unfettered Rights to Infringing Derivative Work**

Despite the many oral and written warnings Plaintiffs sent to TVT and never obtaining any signed writing from Plaintiffs (Am. Compl.. Par. 37, 38), Mr. Gottlieb claims that TVT is the exclusive owner of all the rights in the Infringing Derivative Work, including those portions embodying Plaintiff's Gasolina Composition and Gasolina Master. (Pollack Opp. Decl. Par. 21)

**Direct Infringement in the United States**

The Infringing Derivative Work has been sold in the United States outside the scope of the Limited License. (Pollack Opp. Decl. Par. 3-19; Exh. A-J)

**TVT Acknowledges Existence of Licenses**

TVT has acknowledged the existence of the Infringing Licenses with respect to Compilation Albums (which compilation albums are available for purchase in the United States) and with respect to the existence of digital download licenses of the Infringing Derivative Work (collectively, "Infringing Licenses")" (Pollack. Opp. Decl. Par. 19).

**TVT Has Permitted No Discovery**

Despite repeated request by Plaintiffs, TVT has failed and refused to produce any copies of the Infringing Licenses, or confirm the applicable territories with respect to the Infringing Licenses, which TVT admits it has issued to third parties and/or by and through its wholly owned subsidiaries. In fact, TVT has refused to engage in any discovery of any kind. (Pollack Opp. Decl Par. 20)

**LEGAL DISCUSSION**

**I.     MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. 12(b)(1)**

**A.     Standard of Review**

In considering a motion to dismiss under Rule 12(b)(1) with respect to subject matter jurisdiction, the court must view the complaint in the light most favorable to the plaintiff. See, e.g., <u>Yoder v. Orthomolecular Nutrition Inst., Inc.</u>, 751 F.2d 555, 562 (2d. Cir. 1985). Furthermore, when passing on a motion to dismiss, the court must "assume the truth of all factual allegations contained in the complaint and draw all inferences in the plaintiff's favor." <u>Boyd v. Nationwide Mut. Ins. Co.</u>, 208 F.3d 406, 409 (2d Cir. 2000).

Therefore, [t]he court should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Sheppard v. Berman, 18 F.3d 147, 150* (2d Cir.), *cert. denied, 513 U.S. 816, 130 L. Ed. 2d 28, 115 S. Ct. 73 (1994).* "<u>Well-Made Toys Mfg. Corp. v. Lotus-Onda Industrial Corp.</u>, 2003 U.S. Dist. Lexis 68 *10 (S.D.N.Y. 2003). As the Second Circuit noted in <u>Nowak v. Ironworkers Local 6 Pension Fund</u>, 81 F.3d 1182, 1188 (1996):

> Because of the more-than-occasional difficulties involved in parsing a claim alleging federal question jurisdiction to determine whether it fails to state a claim or fails to meet jurisdictional requirements, <u>the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances</u>. (emphasis added)

As set forth below, the instant Motion does not provide one of the narrow circumstances under which a Court may dismiss for lack of subject matter jurisdiction.

### B. Evidence of Copyright Infringement in the United States Demonstrate Subject Matter Jurisdiction

As TVT acknowledged on page 4 of its Moving Memorandum of Law, affidavits or other evidence may be used by the Court in determining whether subject matter jurisdiction exists. See Well-Made Toys, supra, at *12 [ "[T]he court may resolve disputed jurisdictional facts issues by reference to evidence outside the pleadings such as affidavits. ]"

As unequivocally demonstrated in the Declaration of Jonathan Pollack, there is evidence of direct infringement in the United States with respect to the inclusion of the Infringing Derivative Work in compilation albums advertised and available for sale in the United States (and in fact purchased in the United States). (Pollack Opp. Decl. Par. 3-19 and Exh. A-J )" This Evidence of copyright infringement in the United States, demonstrates the meritlessness of TVT s' Rule 12(b)(1) Motion.

### C. Absent Discovery, Dismissal Not Appropriate

As noted in Well-Made Toys, supra, at *16: "According to the Second Circuit, in resolving claims that they lack jurisdiction, courts have acted in a fashion suggestive of [Rule] 56(f): they have required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts

are peculiarly within the knowledge of the opposing party." *Kamen 791 F.2d at 1011* (citing *Investment Properties International, Ltd. v. IOS, Ltd., 459 F.2d 705, 707-08 (2d Cir. 1972).* "(emphasis added) *See also* Briley, Trevone Productions and MLK Company v. Blackford, Hargitay et al., 1990 U.S. Dist. LEXIS 10967 (SDNY 1990), in which Judge Leval granted leave to conduct jurisdictional discovery in a copyright action, noting that [t]he facts are complicated and mostly within the control of the defendants. "

Here, TVT has not permitted any discovery, and in fact refused to produce any documents related to the Infringing License nor permitted the deposition of any of TVT s 'officers with knowledge of the Infringing Licenses. (Pollack Opp. Decl. Par. 20 ) Therefore, even if Plaintiffs had not already uncovered evidence of U.S. copyright infringement (which they have), just as in Well-Made Toys: The instant case invites the sort of inquiry into the existence of a jurisdictional fact that discovery might provide. Dismissal is thus not appropriate at this stage of the litigation. Well-Made Toys, supra, at *17 (emphasis added)

## II.      MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. 12(b)(1)

### A.      Standard of Review

It is well settled that when considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the plaintiff. See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 90 L. Ed. 2d 480, 106 S. Ct. 2034 (1986); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); Well-Made Toys, *supra.*

Accordingly, dismissal is only proper when it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Well-Made Toys, *supra.*

### B.     Plaintiffs Claims Arising Under U.S. Copyright Law Should Not Be Dismissed

The Amended Complaint Sets forth six claims for relief; five of which are related to domestic and foreign copyright infringement and equitable and legal remedies with respect thereto. Specifically, Plaintiffs allege two claims for relief for infringement of U.S. Copyright laws, one for infringement of foreign copyright laws, one for relief pursuant to a Preliminary Injunction and one claim for a Declaratory Judgment related to such infringement. (The remaining claim is for relief relates to TVT s' violation of the Lanham Act discussed in Section II. E. below.)

TVT s Memorandum in support of the instant motion sets forth only one defect in the Amended Complaint with respect to Plaintiffs claims for relief related to copyright infringement — TVT contends that this Court does not have subject matter jurisdiction over the claims. This alleged defect exists neither in fact, nor as a matter of law.[1]

---

[1] Federal Courts have original jurisdiction over any civil action arising under Federal copyright law. 28 USC Sec. 1338(a).

As noted in Section I.A. above, the federal courts have followed a general practice of granting jurisdiction in most cases and <u>dismissing for lack of subject matter jurisdiction only under narrow circumstances.</u> (emphasis added)   <u>Nowak</u>, <u>supra,</u> 81 F.3d at 1188 (1996). This case does not present one of those narrow circumstances.

### (1)  TVT Committed Acts of Infringement in the United States

Plaintiffs First and Third Claims for Relief clearly allege claims arising under U.S.Copyright Law.   The Amended Complaint alleges, *inter alia*:

> Par. 26.        In or about the March, 2005, Plaintiffs discovered that, in territories throughout the world, the Infringing Derivative Work was being licensed and sold and otherwise being actively promoted and exploited by the Defendants other than pursuant to the Limited License, that is other than embodied in the Crunk Juice Album  …
>
> > (d)       .TVT had licensed the Infringing Derivative Work to third parties for the purpose of selling the Infringing Derivative Work individually and not as part of the Crunk Juice Album, by way of   digital download . ' "
>
> Par. 28         Defendants  infringing activity, to wit licensing and exploiting the Infringing Derivative Work in connection with compilations, digital downloads and synchronization licensing, all without authority or consent of any of Plaintiffs, has damaged, and, if not stopped, shall irreparably damage Plaintiffs.
>
> Par. 29.       Defendant TVT has not withdrawn nor suspended any existing improper licenses of the Infringing Derivative Work.   "

As detailed below, and "assuming the truth of all factual allegations contained in the complaint 'and drawing all inferences in the plaintiff's favor," <u>Boyd v. Nationwide Mut. Ins. Co</u>., 208 F.3d 406, 409 (2d Cir. 2000), this Court must conclude that Plaintiffs have stated claims for relief under the Copyright Act for which this Court does have subject matter jurisdiction.

Contrary to TVT's 'Memorandum, <u>the allegations set forth in the Amended Complaint do not state that the infringement claims relate only to Europe</u>. " Instead, Plaintiffs allege that <u>in territories throughout the world</u> the Infringing Derivative Work was being licensed and sold and otherwise being actively promoted and exploited by [TVT] '(Am. Compl. Par. 26, emphasis added) All reasonable inferences support the conclusion that the allegations with respect to "throughout the world 'relate to copyright violations occurring both within and outside the United States.

Furthermore, Plaintiffs specifically allege the existence of Infringing Licenses that permit digital downloads –and it is common knowledge that such digital downloads are purchasable through computers in the United States. (Am. Compl. Par. 26, 28; Pollack Opp. Decl. Par. 19) In <u>United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc</u>., 216 F. Supp. 2d 198, 205, 225 (S.D.N.Y. 2002) the Court held that a motion to dismiss a copyright infringement claim for lack of subject matter jurisdiction borders on the frivolous 'where allegedly infringing material is accessible from computers within United States. "

However what is most significant, and <u>incontrovertibly fatal to TVT's Motion to</u> <u>Dismiss</u> Plaintiff's claims for relief based on U.S. copyright infringement, <u>is the</u> <u>fact that, pursuant to licenses issued by TVT, the Infringing Derivative Work is</u> <u>now available and has actually been sold and distributed in the United States.</u> (See Pollack Opp. Decl. Par. 3-19 and Exh. A-J)

In summary, in addition to the unauthorized digital download licenses, which by their very nature are available on computers in the United States, the Amended Complaint also alleges that TVT granted unauthorized licenses permitting the manufacture of compilation albums embodying the Infringing Derivative Work, which compilations are, <u>in fact,</u> available for direct purchase in the United States. (Pollack Opp. Decl. Par. 3-18, Exh. A-J)

As noted in <u>The McGraw Hill Companies Inc. v. Ingenium Technologies, Corp.</u> 2005 U.S. Dist. LEXIS 11548 (2005): While defendant is correct that copyright and trademark laws have only limited extraterritorial application, [citations omitted] <u>no such extraterritorial application is contemplated in this case,</u> <u>where</u> <u>plaintiff seeks an injunction that applies to activities felt within the United</u> <u>States.</u> (emphasis added) That is exactly the case here as well. As a result of TVT's conduct, unauthorized and unlawfully manufactured copies of the Infringing Derivative Work are available in the U.S. by direct sale of compilation recordings. (Pollack Opp. Decl.Par. 3-21) Accordingly, Plaintiffs are <u>not</u> seeking the extraterritorial application of U.S. copyright law.

Therefore, TVT simply is wrong when it contends that Plaintiffs do not allege or cannot prove that TVT committed acts of infringement in the United States.[2]

## 2.   TVT Is Liable as a Vicarious and Contributory Infringer

As the Second Circuit has long held, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." Gershwin Publ'g Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); Armstrong v. Virgin Records, Ltd., 91 F. Supp. 2d 628 (S.D.N.Y. 2000). Plaintiffs have alleged the elements necessary to prove TVT's vicarious liability - - an infringement of Plaintiffs' copyrights and knowing inducement of the infringing activity.   Universal City Studios, Inc. v. Nintendo, Inc., 615 F. Supp. 838, 857   (S.D.N.Y 1985). The liability of one found guilty of vicarious infringement is joint and several with all infringers. *Id.*

Even if TVT was not contributorily and/or vicariously liable for importation of the Infringing Derivative Work into the United States (and TVT certainly is), TVT is nonetheless liable for its predicate acts contributing to copyright infringement abroad.

---

[2] It is beyond cavil that the importation of unlawfully created infringing product is a violation of U.S. Copyright Law. Indeed, by inducing and contributing to the importation of unlawfully made copies of Plaintiffs' copyrighted Work through compilation CD's and/or digital download, TVT is liable, pursuant to 17 USC Sec. 602(a) for "an infringement of the exclusive right to distribute copies  under [17 USC] section 106 . ' " Quality King Distr., Inc. v. L'Anza Research Int'l,' Inc., 523 U.S. 135 (1998)

As noted in <u>Briley, Trevone Productions and MLK Company v. Blackford, Hargitay et al.</u>, 1990 U.S. Dist. LEXIS 10967 *6 (SDNY 1990): The Second Circuit has ruled that such a predicate act [necessary to confer subject matter jurisdiction] may include the reproduction of the copyrighted material, preliminary to its publication or distribution abroad. citing <u>Update Art, Inc. v. Modiin Pub. Ltd.</u>, 843 F.2d 67 (2d Cir. 1988) [The *possibility* that reproduction of poster by employee of defendant occurred in United States, although infringing activity occurred in Israel, was enough to confer subject matter jurisdiction.]

This is exactly what Plaintiffs shall ultimately prove. Namely, TVT reproduced copies of the Infringing Derivative Work outside the scope of the Limited License, transmitted the same to third parties in exchange for valuable consideration, knowing that such copies of the Infringing Derivative Work would be manufactured in a manner that would constitute an infringement of Plaintiff's exclusive rights in the copyrighted Gasolina Recording both in the United States (17 USC Sec. 106) and abroad.

Accordingly, <u>in addition to the subject matter jurisdiction conferred by the actual infringement by TVT and its licensees in the United States (Pollack Opp. Decl. Par. 3-21)</u>, this Court has subject matter jurisdiction based on TVT's initial reproduction of the Infringing Derivative Work in the U.S. outside the scope of the Limited License, and conveyance thereof to licensees for the purpose of inducing the manufacture of unauthorized copies of the Infringing Derivative

Work,, copies of which are, in fact, sold in the United States. (See Am. Compl. Par. 28 and Pollack Opp. Aff. Par. 3-19, Exh. A-J ).

TVT s 'Motion asks this Court to accept the contention that TVT is immune from liability under U.S. Copyright law despite allegations that (i) TVT committed predicate acts in the U.S. and (ii) otherwise solicited, induced and authorized foreign entities to unlawfully manufacture the Infringing Derivative Work for advertisement, distribution and sale of Plaintiffs copyrighted works throughout the world, including in the United States.     Such contention is wholly without merit, as is TVT s 'Motion to Dismiss Plaintiffs copyright claims.

### C.     This Court Has Jurisdiction Over Claims Arising Under Foreign Copyright Laws

Plaintiffs  Fifth Claim for Relief alleges, *inter alia,*

> Par. 52.  Upon information and belief, the Infringing Derivative Work was copied, distributed and sole in various territories outside of the United States in direct violation of Plaintiffs  international copyrights as protected by the Universal Copyright Convention and otherwise.
>
> Par. 53 By reason thereof, defendants infringed upon Plaintiffs  international copyright to an extent to be more fully determined following discovery of defendants  ' business records.

The issue before the Court in Well Made Toys, *supra* was whether the Federal Court in the Southern District of New York had jurisdiction over a defendant who had allegedly committed an act of copyright infringement under the laws of Hong Kong.  Judge Motley denied the motion to dismiss a claim for relief which was based on the violation of Hong Kong copyright law, relying in large part on

15

<u>Armstrong v. Virgin Records, Ltd.</u>, 91 F. Supp. 2d 628 (S.D.N.Y. 2000) (in which Judge Sweet denied a motion to dismiss plaintiff's claims for violations of copyright laws of *unspecified countries*).

Both Judges Motley and Sweet acknowledged that: "a number of authorities and commentators have indicated that the district court may exercise subject matter jurisdiction in cases of transnational copyright infringement. See e.g. *London Film Prods. Ltd. v. Intercontinental Communications, 580 F. Supp. 47, 48-50 (S.D.N.Y. 1984); Frink America, Inc. v. Champion Road Machinery Ltd., 961 F. Supp. 398, 404-05  N.D.N.Y. 1997)* " <u>Well-Made Toys</u>,  *supra*, at *30-31. <u>Armstrong</u>, *supra*, at 637.

 As noted in both <u>Armstrong</u> and <u>Well-Made Toys</u>, this Court has subject matter jurisdiction over any claims properly arising under United States copyright law, "potentially allowing the court to exercise pendant jurisdiction over claims arising under foreign law." <u>Armstrong</u>, *supra*, 91 F. Supp. 2d at 637. [3]

---

[3] 4 *Nimmer § 17.03*   Even if the United States Copyright Act is clearly inoperative with respect to acts occurring outside of its jurisdiction, it does not necessarily follow that American courts are without [subject matter] jurisdiction in such a case. If the plaintiff has a valid cause of action under the copyright laws of a foreign country, and if personal jurisdiction of the defendant can be obtained in an American court, it is arguable that an action may be brought in such a court for infringement of a foreign copyright law. This would be on a theory that copyright infringement constitutes a transitory cause of action, and hence, may be adjudicated in the courts of a sovereign other than the one in which the cause of action arose.  "

Furthermore, as your Honor noted in Document Technologies Inc. v. Wilsea and National Films Services, Inc., *1999 U.S. Dist. LEXIS 2942 (SDNY 1999):* "The Court enjoys supplemental jurisdiction over all claims that are "part of the same case or controversy" as the claims over which the Court may properly exercise federal subject matter jurisdiction. See *28 U.S.C. § 1367*(a). "

It is also worth noting that in Armstrong, as is the case here, the plaintiff had not yet identified the specific countries whose copyright laws plaintiff sought to avail himself. Nonetheless, Judge Sweet denied the pre-discovery motion to dismiss concluding that "it is through discovery that [the plaintiff] will presumably learn about the defendants' distribution and licensing activities abroad. "Armstrong, *supra*, at 638,

As in Armstrong, *supra*, at 638 [t]here is therefore no reason to believe, at this point, that this Court would be absolutely foreclosed from applying foreign law to [Plaintiffs ]'claims of infringement. "Additionally, here (as in Armstrong and Well-Made Toys) there is diversity between the parties to this action and the amount in controversy exceeds $75,000.00.

Accordingly, at this juncture of the litigation, namely, prior to any discovery, it would be improper to grant TVT s' Motion with respect to Plaintiff s Fifth Claim for Relief under foreign copyright law.

### D. Plaintiffs State A Claim For Declaratory Relief Under the Copyright Act

By reason of all of the foregoing, Plaintiffs have stated substantive claims for United States and foreign copyright infringement for which the Court has subject matter jurisdiction. Since the substantive claims underlying the Amended Complaint should not be dismissed, there is no basis for dismissing Plaintiffs ' claim for a Declaratory Judgment (Am. Compl. Par. 54-55)

It is well settled that the Federal Declaratory Judgment Act[4] is available in cases of actual controversy with respect to a question subject to Federal jurisdiction. " *See, e.g.,* GMA Accessories, Inc. v. Idea Nuova, Inc.., et al., 157 F. Supp. 2d 234, 243 (SDNY 2000). In order to show the existence of an actual controversy, the complaint must allege facts from which may be inferred some likelihood that defendant would threaten plaintiffs or his licensees with infringements. Starter Corp. v. Converse, Inc., 84 F.3d 592, 595 (2d Cir. 1996)

The Amended Complaint not only alleges that TVT has taken actions infringing Plaintiffs 'copyrights, but the Amended Complaint, and the declarations submitted herewith and in support of Plaintiffs Motion for Preliminary Injunction clearly allege, and demonstrate, TVT s 'intention to continue to claim ownership over Plaintiffs copyrights and to otherwise infringe said rights within and outside the United States. (Am. Compl. Par. 29, 37-39, Pollack Opp. Decl. Par. 21)

---

[4] 28 USC Sec. 2201. In a case of actual controversy within its jurisdiction, . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought .... "

In sum, the Amended Complaint together with the Declarations submitted in opposition to TVT's Motion and in Support of Plaintiffs Motion for a Preliminary Injunction demonstrate an actual controversy with respect to copyright ownership of the Infringing Derivative Work in the United States and the threat of subsequent litigation with respect to such infringements.

As the Second Circuit held in Starter Corp., *supra,* 84 F.3d at 597:

> "While it is true that a district court's determination whether to exercise declaratory jurisdiction is denominated as discretionary, *Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501, 505 (2d Cir. 1968),* <u>a district court is required to entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.</u>" *Continental Cas. Co., 977 F.2d at 737.* (emphasis added)

In the case at bar, a declaratory judgment will serve a useful purpose in clarifying whether TVT has any rights to exploit the Infringing Derivative Work other than as embodied in the Crunk Juice Album (at least in the United States), and the rendering of such a declaratory judgment will likely afford relief to all parties with respect to future litigation otherwise certain to arise in the absence of such judgment.

Additionally, we respectfully remind the Court that Plaintiffs moving papers in support of its Motion for a Preliminary Injunction against TVT demonstrate the likelihood of success on the merits of Plaintiff's copyright claims. Plaintiffs seek to enjoin TVT from committing further unauthorized exploitation of the

Infringing Derivative Work in violation of U.S. Copyright Laws and/or committing additional predicate acts with respect to extra-territorial infringement.

**E.      Plaintiffs Lanham Act Claim Should Not Be Dismissed**

**(1)      As A Matter of Law, Plaintiffs Allege a Prima Facie Claim Under the Lanham Act**

Plaintiff s 'Fourth Claim for Relief is based on allegations that defendant TVT falsely identified the Infringing Derivative Work and falsely used Plaintiff s 'name and the title of Plaintiffs ' copyrighted work to identify the Infringing Derivative Work, and that such incorrect designation will cause consumers confusion as to the origin of the Infringing Derivative Work.

Defendant TVT relies heavily on <u>Dastar Corp. v. Twentieth Century Film Corp</u>., 539 U.S. 23, 35 -37 (2003). In <u>Dastar,</u> the Petitioner released a video series based on video footage in the public domain and failed to credit Respondent, the original author, in the packaging of that work (Petitioner took credit as the sole originator of the video series). The <u>Dastar</u> Court held that failing to credit the original author was not a violation of the Lanham Act. However, the facts of <u>Dastar</u> are inapposite to the allegations set forth in the Amended Complaint here.

Unlike the Petitioner in <u>Dastar,</u> the gravaman of Plaintiffs ' Lanham Act claim does not relate to TVT s ' failure to credit plaintiff Ayala as originator of a work, but instead relates to TVT s ' misleading and falsely identifying the Infringing

20

Derivative Work as originating with Plaintiff Ayala and that such misleading and false identification of Plaintiff Ayala will confuse the public as to the true origin of the Infringing Derivative Work.[5]

In other words, unlike in <u>Dastar,</u> Plaintiffs here do not simply allege that TVT provided improper credit or copied without attributing credit. To the contrary, here, the Lanham Act claim alleges TVT and its licensees falsely and improperly used plaintiff Ayala's trade name "Daddy Yankee" to boost sales of the Infringing Derivative Work with the intent and effect of confusing the public as to the Infringing Derivative Work's true origin.

TVT's Memorandum of Law correctly cites <u>Dastar,</u> 539 U.S. at 37, noting that "the phrase [origins of goods] refers to the producer of tangible goods that are offered for sale and not to the author of any idea, concept, or communication embodied in those goods," but again improperly applies this holding to the case at bar.

---

[5] Amended Complaint Par. 42 states: "On or about January, 2005, Defendants and/or their licensees began exploiting the Infringing Derivative Work with improper crediting of Plaintiffs' interests and authorship with the intent of causing confusion in the marketplace as to the origin and authorship of the Infringing Derivative Work. "

Amended Complaint Par. 43 states: "The public performance and sale of the Infringing Derivative Work as part of compilation albums misleadingly and falsely identifying the Infringing Derivative Work using the incorrect title "Gasolina" and misleadingly and falsely crediting Daddy Yankee as the author and recording artist confused the general public as to the origin of the Gasolina Recording and the Infringing Derivative Work separately. "

Amended Complaint Par. 44: "Defendant TVT's and their unauthorized licensees' actions and misrepresentations of fact are likely to continue to cause confusion, mistake, and deceive the public as to the affiliation, connection, or association of Daddy Yankee with the Infringing Derivative work and confuse and deceive the public as to the origin, sponsorship, or approval by Daddy Yankee of the Infringing Derivative Work. "

Contrary to TVT's assertion, the sale of CD's does not constitute the sale of a tangible good. "Furthermore, Plaintiffs' allegation of confusion as to origin in the Amended Complaint refers not to the author of the idea, concept or communication embodied in those goods but, instead, refers to confusion as to the producer and originator of the Infringing Derivative Work in the eyes of the consumer, namely plaintiff Ayala's trade name, "Daddy Yankee.""

Plaintiffs correctly and properly allege that the general public will be confused as to whether or not the Infringing Derivative Work originated with Daddy Yankee — an allegation that, if proven, is subject to redress by the Lanham Act.

### (2) TVT's Conduct Has Resulted in Lanham Act Violations in the United States

Con, instead, trary to TVT's wholly false assertion on page 3 and 9 of its Memo of Law, nowhere in the Amended Complaint do Plaintiffs allege that the Lanham Act violations occurred *only in Europe.* "Indeed, the only reasonable reading of the allegations in the Amended Complaint, and all reasonable inferences derived therefrom, is that Lanham Act violations occurred within the territory of the United States. (See Footnote 3 above for actual text of the Lanham Act allegations set forth in the Amended Complaint.)

Plaintiffs respectfully submit that in view of the allegations of Lanham Act violations in the United States, there is no need for this Court to parse any legal analysis with respect to extraterritorial application of the Lanham Act at this time.

Indeed, at this procedural juncture, prior to any discovery, Plaintiffs need not "prove" any prerequisites with respect to extraterritorial application of the Lanham Act.

Accordingly, TVT's Motion to Dismiss Plaintiffs should be denied at this stage of the litigation.

## IV.    CONCLUSION

It is respectfully submitted that based on this Memorandum of Law, the allegations set forth in Plaintiff's Amended Complaint and the Opposing Declaration of Jonathan S. Pollack demonstrating, *inter alia*, the existence of copyright infringement in the United States, this Court should deny TVT's Motion to Dismiss in its entirety

Even if Plaintiffs had not submitted evidence of facts conferring subject matter jurisdiction upon this Court, at this procedural juncture, where there has been no discovery and additional facts relevant to the jurisdictional issues are wholly within the knowledge of TVT, dismissal based on subject matter jurisdiction would be improper. Only after discovery of the exact terms, conditions and territories for which the Infringing Licenses apply, will Plaintiffs be able to state with further specificity the scope of the infringement, and the foreign laws, in addition to U.S. Copyright and Trademark Law, that TVT has violated.

In the event TVT's Motion to Dismiss is not denied in its entirety, Plaintiffs respectfully request leave to conduct jurisdictional discovery and/or in the alternative, leave to amend the Amended Complaint.

Oral Argument is requested.

Dated: July 14, 2005
New York, New York

Respectfully Submitted,

By:_____
        Jonathan S. Pollack
        (JP 9043)

LAW OFFICES OF
JONATHAN S. POLLACK
Attorneys for Plaintiffs
Ramon Ayala, El Cartel, Inc. and
Los Cangris,Inc. d/b/a Cangris
Publishing
274 Madison Avenue 19th Fl
New York, NY 10016
Tel. 212 889-0761